UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **KELLY STRACHE** and **LINDA ALLARD**, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>**SCI DIRECT, INC. d/b/a NEPTUNE SOCIETY,**<br><br>Defendant. | Civil Case No.: 17-cv-4692<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT** |

## INTRODUCTION

1. This action arises out of Defendant SCI Direct Inc.'s (d/b/a Neptune Society) ("Defendant") practice of placing prerecorded telemarketing calls to individuals in the absence of prior express written consent, and in the absence of any "do not call" policy or training, in violation of two separate provisions Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ("TCPA").

2. Because Defendant has failed to implement these mandated policies and procedures, Defendant has made it difficult for persons such as Plaintiffs Linda Allard and Kelly Strache to stop Defendant's calls once they begin.

3. Despite Plaintiffs asking Defendant to stop calling on numerous occasions, Defendant continued to place telemarketing calls to Plaintiffs' cellular telephones.

4. Yet because of Defendant's lack of written policy or training, these requests were neither honored nor documented.

5. Furthermore, several of the calls to Plaintiff Allard used a prerecorded voice, to which Plaintiff Allard never consented.

6. All of these telephone calls were made in an effort to convince Plaintiffs to purchase services from Defendant, making them telemarketing.

7. Accordingly, Plaintiffs bring this TCPA action on behalf of themselves and two proposed classes of similarly situated individuals for claims under 227(b) and 227(c) of the TCPA.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction under 28 U.S.C. § 1331, as this action arises under the TCPA, which is a federal statute.

9. This Court has jurisdiction over Defendant because Defendant conducts business transactions in Illinois, has committed tortious acts in Illinois, and has offices located in Illinois.

10. Venue is proper in this District because Defendant conducts significant amounts of business transactions within this District, has offices located in this District, and because some of the wrongful conduct giving rise to this case occurred in, was directed to, and/or emanated from this District.

## PARTIES

11. Plaintiff Strache is, and at all times mentioned herein was, a citizen and resident of Minooka, Illinois.

12. Plaintiff Strache is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

13. Plaintiff Allard is, and at all times mentioned herein was, a citizen and resident of Hendersonville, Tennessee.

14. Plaintiff Allard is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

15. Defendant SCI Direct, Inc. is, and at all times mentioned herein was, a Florida corporation headquartered at 1929 Allen Parkway, Houston, TX 77019.

16. Defendant SCI Direct, Inc. is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153 (39).

## PLAINTIFF ALLARD FACTS

17. In approximately February 2013, Defendant began placing telephone calls using a prerecorded voice advertising Defendant's services to Plaintiff's cellular telephone number, 615-###-0617.[1]

18. Plaintiff never gave Defendant prior express written consent to place prerecorded calls to her cellular telephone.

19. Upon information and belief, Defendant did not and does not obtain prior express written consent from interested parties prior to making prerecorded or autodialed telemarketing calls to their telephones.

20. Because Plaintiff never agreed to the calls and did not want the calls, Plaintiff asked Defendant to stop calling her.

21. Nonetheless, these prerecorded calls continued.

22. On August 4, 2014, Plaintiff received a prerecorded call from 615-545-5541 explaining that Plaintiff still had time to sign up before prices were raised.

23. Plaintiff called back this number and left a voicemail asking Defendant not to contact her again.

24. Plaintiff also called Defendant's corporate office at 954-556-9400 and left a voicemail asking them to not contact her again.

---

[1] Plaintiff has since changed her telephone number.

25. Instead of stopping the telephone calls, Defendant sent Plaintiff a follow up email thanking her for requesting information.

26. Fed up, Plaintiff filed a complaint with the Better Business Bureau on August 6, 2014, asking for their help in stopping the calls.

27. On August 11, 2014, Defendant responded, writing: "We sincerely apologize for your receipt of any unsolicited advertisement materials and telephone calls. We will promptly remove the address and telephone number listed in this complaint from our system."

28. Nonetheless, on September 17, 2014, Plaintiff received yet another prerecorded call from Defendant's telephone number 615-373-6946.

29. Given the sensitive subject matter of making funeral arrangements, these constant calls were extremely upsetting and distressing to Plaintiff. Plaintiff, like most people, did not enjoy receiving unsolicited reminders of her mortality through a prerecorded message.

30. All of these calls were placed using an artificial or prerecorded voice.

31. Plaintiff knew that these calls used a prerecorded voice because she is familiar with normal human interaction, and could tell that the voice on the other line was a recording rather than a live person with whom she could interact. She was unable to interrupt the voice or get the voice to deviate from the prerecorded message, as is the case with prerecorded messages.

32. Defendant did not have prior express written consent to place any of the calls to Plaintiff's cellular telephone number because its disclosures were inadequate as a matter of law.

33. Plaintiff also revoked any consent Defendant believed it had.

34. Accordingly, Defendant's calls all violated 47 U.S.C. § 227(b).

35. Plaintiff is entitled to at least $500 for each call placed to her cellular telephone in violation of 47 U.S.C. § 227(b).

36. Plaintiff is entitled to $1,500 per call for violations of § 227(b) if the Court finds that the violations were knowing and/or willful.

## PLAINTIFF STRACHE FACTS

37. Beginning in approximately March 2016, Defendant began placing telephone calls to Plaintiff's cellular telephone, number 815-###-3849.

38. Plaintiff, on numerous occasions, asked Defendant to stop calling her.

39. These requests were neither honored nor documented.

40. Defendant called Plaintiff dozens of times from approximately March 2016 through May 2016.

41. Defendant even placed a call to Plaintiff Strache after she filed her lawsuit.

42. These calls were made to convince Plaintiff to purchase Defendant's cremation services.

43. Given the sensitive subject matter of making funeral arrangements, these constant calls were extremely upsetting and distressing to Plaintiff. Plaintiff, like most people, did not enjoy receiving unsolicited reminders of her mortality.

## FACTS APPLICABLE TO BOTH PLAINTIFFS

44. The TCPA prohibits making "any call for telemarketing purposes" unless the caller has instituted certain minimum standards with respect to persons who request not to receive telemarketing calls.

45. These standards include, among others, keeping a written policy, available upon demand, for maintaining a do-not-call list, and training personnel engaged in telemarketing on the existence and use of the do-not-call list. 47 CFR § 64.1200(d).

46. At the time of its calls to Plaintiffs, Defendant did not have such a written policy,

nor did it train personnel engaged in telemarketing on the existence and use of the do-not-call list.

47. None of the aforementioned calls were made for any emergency purpose.

48. Accordingly, all of Defendant's telemarketing calls, regardless of consent or equipment used, violate 47 U.S.C. § 227(c).

49. Plaintiffs are entitled to up to $500 for each call placed to their cellular telephones in violation of 47 U.S.C. § 227(c) (for Plaintiff Allard, this would be in addition to the damages for 227(b)).

50. Plaintiffs are entitled to $1,500 per call for violations of § 227(c) if the Court finds that the violations were knowing and/or willful.

51. Plaintiffs have suffered actual injury as a result of Defendant's telephone calls, including, but not limited to:

- Device storage;
- Data usage;
- Plan usage;
- Lost time tending to and responding to the unsolicited calls;
- Invasion of Privacy;
- Nuisance.

52. These forms of actual injury are sufficient for Article III standing purposes.

## CLASS ACTION ALLEGATIONS

53. Plaintiffs bring this action under Fed. R. Civ. P. 23 on behalf of two proposed classes, defined as follows:

   i. **Prerecord Class:** Since October 16, 2013, Plaintiff and all persons within the United States to whose telephone number Defendant SCI Direct, Inc.

      placed a telephone call using CallFire, Inc.'s calling platform when that call was dispositioned as "Answering Machine," "Live Answer," or "Do Not Call."

   ii. **DNC Class**: Since May 27, 2012, Plaintiffs and all persons within the United States to whose telephone number Defendant SCI Direct, Inc. placed (or had placed on its behalf) two or more telephone calls in a 12-month period.

54. Excluded from the Classes are Defendant and any entities in which Defendant has a controlling interest; Defendant's agents and employees; any Judge and Magistrate Judge to whom this action is assigned and any member of their staffs and immediate families, and any claims for personal injury, wrongful death, and/or emotional distress.

55. The Class members for whose benefit this action are brought are so numerous that joinder of all members is impracticable.

56. The exact number and identities of the persons who fit within the class are ascertainable in that Defendant maintains written and electronically stored data showing:

   a. The time period(s) during which Defendant placed its telephone calls;

   b. The telephone numbers to which Defendant placed its telephone calls;

   c. The telephone numbers for which Defendant had prior express written consent;

   d. The telephone numbers associated with any "stop calling" requests;

   e. The equipment and systems used to make each call;

   f. The names and addresses of Class members.

57. The Classes are comprised of hundreds, if not thousands, of individuals nationwide.

58. There are common questions of law and fact affecting the rights of the Class members, including, *inter alia*, the following:

   a. Whether Defendant used an automatic telephone dialing system to make its calls;

    b. Whether Defendant used a prerecorded and/or artificial voice in its calls;

    c. Whether Defendant took adequate steps to acquire and/or track consent;

    d. Whether any disclosures Defendant provided were sufficient to constitute "prior express written consent";

    e. Whether Defendant maintained a written "do not call" policy;

    f. Whether Defendant trained its employees or agents engaged in telemarketing on the existence and usage of any "do not call" policy;

    g. Whether Plaintiffs and the Classes were damaged thereby, and the extent of damages for such violations; and

    h. Whether Defendant should be enjoined from engaging in such conduct in the future.

59. Plaintiff Allard is a member of both Classes in that Defendant placed two or more calls in a one-year period using a prerecorded voice to her cellular telephone number, in the absence of prior express written consent and without having a written "do not call" policy in place or training its personnel on the existence and use of any such "do not call" policy.

60. Plaintiff Strache is a member of the DNC Class in that Defendant placed two or more calls in a one-year period to her telephone number without having a written "do not call" policy in place or training its personnel on the existence and use of any such "do not call" policy.

61. Plaintiffs' claims are typical of the Class members' claims in that they arise from Defendant's uniform conduct and are based on the same legal theories as Class members' claims.

62. Plaintiffs and all putative Class members have also necessarily suffered actual damages in addition to statutory damages, as all Class members spent time tending to

Defendant's unwanted calls, lost space on their devices, and suffered a nuisance and an invasion of their privacy as they were unable to stop the calls if they wanted to do so.

63. Plaintiffs have no interests antagonistic to, or in conflict with, the Classes.

64. Plaintiffs will thoroughly and adequately protect the interests of the Classes, having retained qualified and competent legal counsel to represent themselves and the Classes.

65. Defendant has acted and refused to act on grounds generally applicable to the Classes, thereby making injunctive and declaratory relief appropriate for the Classes.

66. The prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudications.

67. A class action is superior to other available methods for the fair and efficient adjudication of the controversy since, *inter alia*, the damages suffered by each class member make individual actions uneconomical.

68. Common questions will predominate, and there will be no unusual manageability issues.

## FIRST CAUSE OF ACTION
### Violations of the TCPA, 47 U.S.C. § 227(b)
**(On Behalf of Plaintiff Allard and the Prerecord Class)**

69. Plaintiff Allard and the proposed Prerecord Class incorporate the foregoing allegations as if fully set forth herein.

70. Defendant placed numerous telephone calls to Plaintiff and Class members.

71. These calls all used an artificial or prerecorded voice.

72. The calls were not made for "emergency purposes" as defined by 47 U.S.C. § 227(b)(1)(A)(i).

73. All of the calls were for telemarketing purposes, in that they were made in an attempt to convince call recipients to purchase their services.

74. None of the calls were placed with prior express written consent of the called party.

75. Plaintiff and Prerecord Class members are entitled to an award of $500 in statutory damages for each call, pursuant to 47 U.S.C. § 227(b)(3)(B).

76. Plaintiff and Prerecord Class members are entitled to an award of treble damages in an amount up to $1,500 for each telephone call, pursuant to 47 U.S.C. § 227(b)(3).

## SECOND CAUSE OF ACTION
### Violations of the TCPA, 47 U.S.C. § 227(c)
### (On Behalf of Plaintiffs and the DNC Class)

77. Plaintiff and the proposed Class incorporate the foregoing allegations as if fully set forth herein.

78. Defendant placed numerous calls for telemarketing purposes to Plaintiffs' and Class members' telephone numbers.

79. Defendant did so despite not having a written policy pertaining to "do not call" requests.

80. Defendant did so despite not training its personnel on the existence or use of any "do not call" list.

81. Plaintiffs and Class members each received two or more calls in a 12-month period.

82. Plaintiffs and Class members are entitled to an award of $500 in statutory damages telephone call pursuant to 47 U.S.C. § 227(c)(5).

83. Plaintiffs and Class members are entitled to an award of treble damages in an amount up to $1,500 telephone call, pursuant to 47 U.S.C. § 227(c)(5).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs Linda Allard and Kelly Strache, individually and on behalf of the Classes, pray for the following relief:

A. An order certifying the Classes as defined above, appointing Plaintiff Allard as the representative of the Prerecord Class and a representative of the DNC Class; appointing Plaintiff Strache as a representative of the DNC Class; and appointing their counsel as Class Counsel;

B. An order declaring that Defendant's actions, as set out above, violate 47 U.S.C. § 227(b) and (c);

C. An award of injunctive and other equitable relief as necessary to protect the interests of the Class, including, *inter alia*, an order prohibiting Defendant from engaging in the wrongful and unlawful acts described herein;

D. An award of statutory damages separately for violations of both 227(b) and 227(c);

E. An award of treble damages;

F. An award of reasonable attorneys' fees and costs; and

G. Such other and further relief that the Court deems reasonable and just.

## JURY DEMAND

Plaintiffs request a trial by jury of all claims that can be so tried.

**Dated:** September 29, 2017

s/ Jeremy M. Glapion_____
Jeremy M. Glapion
**THE GLAPION LAW FIRM, LLC**
1704 Maxwell Drive

Wall, New Jersey 07719
Tel: 732.455.9737
Fax: 732.709.5150
jmg@glapionlaw.com