# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **LINDA ALLARD and KELLY STRACHE**, individually and on behalf of all others similarly situated, | Civil Case No.: 17-cv-4692 |
| Plaintiffs, | |
| v. | |
| **SCI Direct, Inc. d/b/a Neptune Society** | |
| Defendant. | |

## STIPULATION OF CLASS ACTION SETTLEMENT

This Stipulation of Class Action Settlement (the "Agreement" or "Settlement") is entered into by and among Plaintiffs Linda Allard ("Allard") and Kelly Strache ("Strache") (collectively, "Plaintiffs"), for themselves individually and on behalf of the Settlement Classes (as defined below), and Defendant SCI Direct, Inc. ("SCI" or "Defendant") (Plaintiffs and Defendant are collectively referred to as the "Parties"). This Agreement is intended by the Parties to fully, finally, and forever resolve, discharge, and settle the Released Claims upon and subject to the terms and conditions hereof, and is subject to the approval of the Court.

## RECITALS

WHEREAS, on May 27, 2016, Plaintiff Allard filed a putative class action complaint against SCI in the United States District Court for the Middle District of Tennessee, captioned *Linda Allard v. SCI Direct, Inc. d/b/a Neptune Society*, Case No. 16-cv-1033 (the "Tennessee Action"), alleging a claim for damages, an injunction, and declaratory relief under the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), related to 1) prerecorded telemarketing telephone calls without the prior express written consent of the called party and 2) allegations that Defendant placed telemarketing telephone calls to persons on the national "Do Not Call"

list;

WHEREAS, the Tennessee Action was assigned to The Honorable Judge Kevin Hunter Sharp and The Honorable Magistrate Judge Barbara D. Holmes;

WHEREAS, on November 28, 2016, Plaintiff Allard filed an Amended Complaint in the Tennessee Action omitting her claims based on alleged calls to persons on the national "Do Not Call" list, and instead alleging that Defendant failed to maintain a written do not call policy or train its employees on any internal "Do Not Call" list;

WHEREAS, on January 26, 2017, Judge Sharp resigned his judgeship effective April 15, 2017;

WHEREAS, the United States Judicial Conference declared the situation in the Middle District of Tennessee to be a Judicial Emergency, with only two remaining active judges (and two vacancies) and the fourth highest "Weighted Filings per Judgeship" in the country;

WHEREAS, on April 11, 2017, the Tennessee Action was transferred to The Honorable Judge Gershwin A. Drain, sitting by designation from the Eastern District of Michigan;

WHEREAS, on May 25, 2017, Plaintiff Strache filed an action against Defendant in the Circuit Court of Cook County, Illinois captioned *Kelly Strache v. SCI Direct, Inc. d/b/a Neptune Society*, Case No. 2017-CH-07421 (the "Illinois State Action") alleging that Defendant made telemarketing calls to her and others similarly situated despite not having a written "do not call" policy or training its employees on any internal "do not call" list;

WHEREAS, on June 22, 2017, the Illinois State Action was removed to the Northern District of Illinois, with the caption, *Kelly Strache v. SCI Direct, Inc. d/b/a Neptune Society*, Case No.17-cv-4692 ("Illinois Action"; together with the Tennessee Action, the "Actions");

WHEREAS, on June 26, 2017, the Parties agreed to stay the Illinois Action pending the

resolution of Plaintiff Allard's Motion for Class Certification and Defendant's Motion for Summary Judgment in the Tennessee Action;

WHEREAS, the Parties agreed to participate in a private mediation with The Honorable Wayne R. Andersen (ret.) of JAMS on August 1, 2017 (the "Mediation");

WHEREAS, on July 10, 2017, Defendant's Motion for Summary Judgment was denied;

WHEREAS, on July 31, 2017, Plaintiff Allard's Motion for Class Certification was granted;

WHEREAS, as a result of their discussions at the mediation and with Judge Andersen, and through extensive subsequent arm's-length settlement negotiations, the Parties were able to reach a proposed class-wide resolution of the Action, as outlined in this Agreement, which required the conditional dismissal of the Tennessee Matter and the submission of this settlement for approval in the Northern District of Illinois;

WHEREAS, on September 29, 2017, an Amended Complaint was filed in this Court, on behalf of both Plaintiffs and asserting claims substantially similar to those stated in the Amended Complaint in the Tennessee Action and the Complaint in the Illinois State Action;

WHEREAS, Plaintiffs and Class Counsel have conducted a comprehensive examination of the law and facts relating to the matters at issue in the Actions regarding their claims and Defendant's potential defenses;

WHEREAS, the Parties have engaged in extensive discovery in this matter;

WHEREAS, based on an analysis of the facts and the law applicable to Plaintiffs' claims and taking into account the burdens and expense of continued litigation, including the risks and uncertainties associated with the judicial situation in the Middle District of Tennessee and protracted trials and appeals, as well as the fair, cost-effective and assured method of resolving

the claims of the Settlement Classes, Plaintiffs and Class Counsel have concluded that the Settlement provides substantial benefits to the Settlement Classes and the public as a whole, and is fair, reasonable, adequate, and in the best interests of Plaintiffs and the Settlement Classes;

WHEREAS, SCI denies all allegations of wrongdoing and liability and denies all material allegations in the Complaint, but has similarly concluded that this Agreement is desirable to avoid the time, risk, and expense of defending protracted litigation and to resolve finally and completely the pending and potential claims of Plaintiffs and the Settlement Class;

NOW, THEREFORE, the Parties stipulate and agree that any and all Released Claims against SCI and all other Released Parties shall be finally settled and resolved on the terms and conditions set forth in this Agreement, subject to Court approval, as a fair, reasonable, and adequate settlement.

**<u>AGREEMENT</u>**

**1.     DEFINITIONS**

As used herein, in addition to any definitions set forth elsewhere in this Agreement, the following terms shall have the meanings set forth below:

1.1     "**Actions"** means the Illinois Action (captioned *Kelly Strache v. SCI Direct, Inc. d/b/a Neptune Society*, Case No.), and the Tennessee Action (captioned *Linda Allard v. SCI Direct, Inc. d/b/a Neptune Society*, Case No. 16-cv-1033).

1.2      "**Agreement**" or "**Settlement**" means this Stipulation of Class Action Settlement (including all exhibits and attachments hereto).

1.3     "**Approved Claim**" means a submitted Claim Form that is (a) timely and submitted in accordance with the directions on the Claim Form and the terms of this Agreement, (b) is physically signed or electronically verified by the Member, and (c) is confirmed to be

submitted by or on behalf of a member of one or both Settlement Classes.

1.4     "**CAFA Notice**" refers to the notice requirements imposed by 28 U.S.C. § 1715(b).

1.5     "**Claim Form**" means the forms attached hereto as Exhibits C and D, as approved by the Court. The Claim Form must be completed and physically signed or verified electronically by Members of the Settlement Classes who wish to file a claim for a settlement payment, and shall be available for submission on or download from the Settlement Website and from the Settlement Administrator in hardcopy form. The Claim Form will require the Members of the Settlement Classes to provide the following information: (i) full name, current address, telephone number, and e-mail address and (ii) a statement that he or she received during the relevant period of time either a prerecorded telephone call from SCI  or two or more telephone calls in a 12-month period. The Claim Form will not require notarization, but will require that the information supplied is true and correct.

1.6     "**Claims Deadline**" means the date by which all Claim Forms must be postmarked or submitted via toll-free telephone number or on the Settlement Website, established pursuant to Paragraphs 5.3(d) and 5.3(e), to be considered timely and shall be set as a date no later than twenty-eight (28) days after the Final Approval Hearing. The Claims Deadline shall be clearly set forth in the order preliminarily approving the Settlement, as well as in the Notice and the Claim Form.

1.7     "**Class Counsel**" means attorney Jeremy Glapion of the Glapion Law Firm, LLC.

1.8     "**Class Representatives**" means the named-Plaintiffs in the Actions, Linda Allard and Kelly Strache.

1.9     "**Court**" means the Northern District of Illinois, The Honorable John Z. Lee

presiding, or any judge who shall succeed him as the Judge assigned to the Illinois Action.

1.10    "**Defendant's Counsel**" means attorneys Joseph Wylie and Nicole Mueller of K&L Gates LLP and Scott Carey and Austin Purvis of Baker, Donelson, Bearman, Caldwell & Berkowitz, PC.

1.11    "**Effective Date**" means one business day following the later of: (i) the date upon which the time expires for filing or noticing any appeal of the Final Judgment; (ii) if there is an appeal or appeals, other than an appeal or appeals solely with respect to attorneys' fees and reimbursement of expenses, the date of completion, in a manner that finally affirms and leaves in place the Final Judgment without any material modification, of all proceedings arising out of the appeal(s) (including, but not limited to, the expiration of all deadlines for motions for reconsideration or petitions for review and/or certiorari, all proceedings ordered on remand, and all proceedings arising out of any subsequent appeal(s) following decisions on remand); or (iii) the date of final dismissal of any appeal or the final dismissal of any proceeding on certiorari with respect to the Final Judgment.

1.12    "**Escrow Account**" means the separate, interest-bearing escrow account to be established by the Settlement Administrator under terms acceptable to Class Counsel and Defendant at a depository institution insured by the Federal Deposit Insurance Corporation. The money in the Escrow Account shall be invested in the following types of accounts and/or instruments and no other: (i) demand deposit accounts and/or (ii) time deposit accounts and certificates of deposit, in either case with maturities of forty-five (45) days or less. The costs of establishing and maintaining the Escrow Account shall be paid from the Settlement Fund.

1.13    "**Fee Award**" means the amount of attorneys' fees and reimbursement of costs to Class Counsel as awarded by the Court.

6

1.14    "**Final Approval Hearing**" means the hearing before the Court where the Parties

will request that the Final Judgment be entered by the Court finally approving the Settlement as

fair, reasonable and adequate, and approving the Fee Award and the incentive awards to the

Class Representatives.

1.15    "**Final Judgment**" means the final judgment to be entered by the Court

approving the class settlement of the Actions in accordance with this Agreement after the Final

Approval Hearing.

1.16    "**SCI Direct, Inc.**" or "**Defendant**" means Defendant SCI Direct, Inc., a Florida

corporation.

1.17    "**Notice**" means the notice of this proposed Settlement Agreement and Final

Approval Hearing, which is to be disseminated to the Settlement Classes substantially in the

manner set forth in this Agreement, fulfills the requirements of Due Process and Fed. R. Civ. P.

23, and is substantially in the form of Exhibits A-D attached hereto.

1.18    "**Notice Date**" means the date upon which the Notice is first disseminated to the

Settlement Class, which shall be a date no later than thirty-five (35) days after entry of

Preliminary Approval.

1.19    "**Objection/Exclusion Deadline**" means the period for the Members of the

Settlement Classes to submit a request for exclusion or file an objection, which shall expire

forty-five (45) days following the Notice Date, subject to Court approval. The deadline will be

set forth in the Notice and on the Settlement Website.

1.20    "**Person**" means any individual, corporation, trust, partnership, limited liability

company, or other legal entity and their respective predecessors, successors or assigns. The

definition of "Person" is not intended to include any governmental agencies or governmental

actors, including, without limitation, any state Attorney General Office.

1.21    "**Plaintiffs**" means, collectively, Allard and Strache.

1.22    "**Notice List**" means a list that identifies all telephone numbers and any associated demographic information in Defendant's possession for those telephone numbers for individuals to whom Defendant made, or was made on behalf of Defendant, a prerecorded call or two or more calls in a 12-month period.

1.23    "**Preliminary Approval**" means the Court's Order preliminarily approving class action settlement, certifying the Settlement Classes for settlement purposes, and approving the form and manner of the Notice, the proposed version of which is attached hereto as Exhibits A-D.

1.24    "**Released Claims**" means any and all claims or causes of action of every kind and description (including any causes of action in law, claims in equity, complaints, suits or petitions) and any allegations of wrongdoing (including any assertions of liability, debts, legal duties, torts, unfair or deceptive practices, statutory violations, contracts, agreements, obligations, promises, promissory estoppel, detrimental reliance, or unjust enrichment) and any demands for legal, equitable or administrative relief (including any claims for injunction, rescission, reformation, restitution, disgorgement, constructive trust, compensatory damages, consequential damages, penalties, exemplary damages, punitive damages, attorneys' fees, costs, interest, or expenses) that the Releasing Parties had or have (including assigned claims and "Unknown Claims" as defined herein) that have been or could have been asserted in the Actions or in any other action or proceeding before any court, arbitrator(s), tribunal or administrative body (including any state, local or federal regulatory body), regardless of whether the claims or causes of action are based on federal, state, or local law, statute, ordinance, regulation, contract,

common law, or any other source, and regardless of whether they are known or unknown, foreseen or unforeseen, suspected or unsuspected, or fixed or contingent, arising out of, or related or connected in any way with any and all telephone calls made by or on behalf of SCI to consumers and all claims or causes of action of every kind and description that were brought, alleged, argued, raised, or asserted in any pleading or court filing in the Actions, including but not limited to any such claim or cause of action under the TCPA or any similar state laws. Nothing herein is intended to release any claims any governmental agency or governmental actor has against Defendant or the Released Parties.

1.25    "**Released Parties**" means Defendant and any and all of its present or former heirs, executors, estates, administrators, predecessors, successors, assigns, parents, subsidiaries, associates, affiliated and related entities, employers, employees, agents, representatives, consultants, independent contractors, directors, managing directors, officers, partners, principals, members, attorneys, accountants, financial and other advisors, investment bankers, insurers, underwriters, shareholders, lenders, auditors, investment advisors, and any and all present and former companies, firms, trusts, corporations, officers, directors, other individuals or entities in which SCI has a controlling interest or which is affiliated with any of them, or any other representatives of any of these Persons and entities.

1.26    "**Releasing Parties**" means Plaintiffs and each and every member of the Settlement Classes, and their respective present or past heirs, executors, estates, administrators, predecessors, successors, assigns, parents, subsidiaries, associates, affiliates, employers, employees, agents, consultants, independent contractors, insurers, directors, managing directors, officers, partners, principals, members, attorneys, accountants, financial and other advisors, investment bankers, underwriters, lenders, and any other representatives of any of these Persons

and entities.

1.27    "**Settlement Administration Expenses**" means the expenses incurred by the

Settlement Administrator in or relating to administering the Settlement, providing Notice,

processing Claim Forms, mailing checks for Approved Claims, and other such related expenses,

with all such expenses to be paid from the Settlement Fund.

1.28    "**Settlement Administrator**" means, subject to approval of the Court, Kurtzman

Carson Consultants ("KCC"), which will oversee the Notice and the processing and payment of

the Claim Forms of Members of the Settlement Classes.

1.29    "**Settlement Award**" means a cash award that may be available to Members of

the Classes pursuant to Section 2.1 of this Agreement.

1.30    "**Settlement Classes**" means:

- **Prerecord Class:** Since October 16, 2013, Plaintiff and all persons within the United States to whose telephone number Defendant SCI Direct, Inc. placed a telephone call using CallFire, Inc.'s calling platform when that call was dispositioned as "Answering Machine," "Live Answer," or "Do Not Call."

- **DNC Class**: Since May 27, 2012, Plaintiff and all persons within the United States to whose telephone number Defendant SCI Direct, Inc. placed (or had placed on its behalf) two or more telephone calls in a 12-month period.

1.31    Excluded from the Settlement Classes are: (1) the Judges presiding over the

Actions and members of their families; (2) the Defendant, its subsidiaries, parent companies,

successors, predecessors, and any entity in which the Defendant or its parents have a controlling

interest and their current or former officers, directors, and employees; (3) Persons who properly

execute and file a timely request for exclusion from the Settlement Class; (4) all Persons whose

claims against the Defendant have been fully and finally adjudicated and/or released; and (5) the

legal representatives, successors or assigns of any such excluded Persons.

1.32    "**Settlement Class Member**", "**Class Member**", "**Member**", or "**Member of the**

**Settlement Classes**" means a Person who falls within the definition of either Settlement Class and who does not request exclusion from the Settlement pursuant to Section 4.4.

1.33    "**Settlement Fund**" means a non-reversionary cash settlement fund to be established by Defendant in the amount of $15,000,000, which shall be deposited into the Escrow Account within twenty-one (21) days after entry of Preliminary Approval. From the Settlement Fund, the Settlement Administrator shall pay all Settlement Administration Expenses, all Approved Claims made by Members of the Settlement Classes, any incentive awards to the Class Representatives, and any Fee Award to Class Counsel. The Settlement Fund represents the total extent of Defendant's monetary obligations under this Agreement.

1.36    "**Settlement Website**" means the website to be created, launched, and maintained by the Settlement Administrator, and which allows for the electronic submission of Claim Forms and provides access to relevant case documents including the Notice, information about the submission of Claim Forms and other relevant documents, including downloadable Claim Forms.

1.37    "**Unknown Claims**" means claims that could have been raised in the Actions and that Plaintiffs, any member of the Settlement Classes or any Releasing Party, do not know or suspect to exist, which, if known by him, her or it, might affect his, her or its agreement to release the Released Parties or the Released Claims or might affect his, her or its decision to agree, to object or not to object to the Settlement. Upon the Effective Date, Plaintiffs, the Settlement Class, and the Releasing Parties shall be deemed to have, and shall have, expressly waived and relinquished, to the fullest extent permitted by law, the provisions, rights and benefits of Section 1542 of the California Civil Code, which provides as follows:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER

FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

Upon the Effective Date, each of the Releasing Parties shall be deemed to have, and shall have, waived any and all provisions, rights and benefits conferred by any law of any state, the District of Columbia or territory of the United States, by federal law, or principle of common law, or the law of any jurisdiction outside of the United States, which is similar, comparable or equivalent to Section 1542 of the California Civil Code. Plaintiffs, the Settlement Classes, and the Releasing Parties acknowledge that they may discover facts in addition to or different from those that they now know or believe to be true with respect to the subject matter of the Release, but that it is their intention to finally and forever settle and release the Released Claims, notwithstanding any Unknown Claims they may have, as that term is defined in this Paragraph.

2.    **SETTLEMENT RELIEF**

    2.1    **Monetary Payments to Members of the Settlement Classes**.

        a.    Defendant shall establish the Settlement Fund within twenty-one days after entry of Preliminary Approval.

        b.    The Settlement Fund shall be maintained in a segregated account at a financial institution with more than $10 billion in assets in an account or accounts insured by an agency or agencies of the United States government, with insurance that exceeds the amounts deposited.

        c.    Members of the Settlement Classes shall have until the Claims Deadline to submit Claim Forms. Each member of the Settlement Classes who submits an Approved Claim shall be entitled to a payment of a *pro rata* share of the amount remaining in the Settlement Fund after payment of all Settlement Administration Expenses, any incentive

award to the Class Representatives, and any Fee Award.

       d.      Within sixty (60) days after the Effective Date, or such other date as the Court may set, the Settlement Administrator shall pay from the Settlement Fund all Approved Claims by check and send said checks via first-class U.S. mail to the Members of the Settlement Classes who submitted all such Approved Claims.

       e.      All cash payments issued to Members of the Settlement Classes via check will state on the face of the check that the check will expire and become null and void unless cashed within 180 days after the date of issuance.

       f.      To the extent that a check issued to a Member of the Settlement Classes is not cashed within 180 days after the date of issuance, the check will be void.

       g.      If the residual amount of uncashed checks (net of anticipated administrative costs) exceeds $200,000, the amount shall be redistributed on a *pro rata* basis to (i) the eligible Members of the Settlement Classes who cashed their first check, and (ii) Members of the Settlement Classes who submitted untimely, but otherwise valid, claims. Members who do not cash their initial checks are not eligible for redistribution. To the extent the remaining amount of uncashed checks (net of anticipated administrative costs) is less than $200,000, the residual amount shall be distributed to the National Consumer Law Center. No money shall revert to Defendant.

2.2    **Prospective Relief.** SCI represents that it will create and implement a written internal do-not-call policy and train all of its agents, employees, and independent contractors responsible for making calls to prospective customers on its behalf on that policy; SCI further represents that it will create and implement any other policies it reasonably believes necessary to ensure compliance with 47 CFR § 64.1200(d)(1)-(6); and SCI further represents that it will

designate all contacts marked in its lead database as "CALL – DECEASED" as "do not call". SCI will maintain the policies and procedures set forth in this subsection for a minimum of two (2) years.

   2.3  **Procedural Relief.** Due to the judicial emergency in the Middle District of Tennessee resulting from Judge Sharp's retirement and the resulting uncertainty, the Parties agree that it is in the best interests of the Classes and judicial economy to effectuate this Settlement in the Illinois Action. To do so, the Parties will stipulate to a conditional dismissal without prejudice in the Tennessee Action. Plaintiffs will, prior to or simultaneously with the filing of the Motion for Preliminary Approval, move to amend the complaint in the Illinois Action to include Plaintiff Allard. Should the Settlement fail to be submitted for preliminary approval in the Illinois Action within thirty (30) days of conditional dismissal, the Tennessee Action shall be reinstated with the current posture of the case preserved as it was prior to the conditional dismissal. The Parties may jointly request an extension of this 30-day period. The dismissal will remain conditional until the Effective Date, at which point the dismissal in the Tennessee Action will become final and subject to the terms of this Agreement. The precise terms of this provision are subject to the approval and modification of the Court in the Tennessee Action.

## 3.  RELEASE

   3.1  The obligations incurred pursuant to this Settlement Agreement shall be a full and final disposition of the Actions and any and all Released claims, as against all Released Parties.

   3.2  **The Release.** Upon the Effective Date, and in consideration of the Settlement relief described herein, the Releasing Parties, and each of them, shall be deemed to have released, and by operation of the Final Judgment shall have, fully, finally, and forever, released, relinquished and discharged all Released Claims against each and every one of the Released

Parties. The Releasing Parties further agree that they will not institute any action or cause of

action (in law, in equity or administratively), suits, debts, heirs or claims, known or unknown,

fixed or contingent, which they may have or claim to have, in state or federal court, in

arbitration, or with any state, federal or local government agency or with any administrative or

advisory body, arising from or reasonably related to the allegations set forth in the Action.

**4.     NOTICE**

4.1     The Notice to the Classes shall include:

a.     *Notice List*. No later than seven (7) days after Preliminary Approval of this

Agreement, Defendant shall provide the Settlement Administrator and Class Counsel with the

Notice List. The Settlement Administrator shall use reasonable commercial services to determine

current U.S. Mail addresses and E-Mail addresses for all Members of the Settlement Classes

identified on the Notice List. This includes performing reverse lookups and other searches as

necessary for to obtain current e-mail address and/or direct mailing addresses, and update the

addresses received through the National Change of Address database for the purpose of

providing the Notice and later mailing Settlement Awards;

b.     *Confidentiality of the Notice List*. The Parties, the Settlement

Administrator, Class Counsel, and Defendant's Counsel shall keep the Notice List and all

personal information obtained there from, including the identity, telephone numbers and U.S.

mailing addresses strictly confidential. The Parties agree that the Notice List may not be used for

any purpose other than advising specific individual Members of the Settlement Classes of their

rights and otherwise effectuating the terms of this Agreement or duties arising there under,

including the provision of Notice as set forth herein.

c.     *Direct Notice*. No later than the Notice Date, the Settlement Administrator

shall disseminate notice of the Settlement along with a pre-paid Claim Form via First Class U.S. mail to Members of the Settlement Classes on the Notice List whose addresses are reasonably identifiable by the Settlement Administrator. The Notice shall be substantially in the form attached as Exhibit A-D. For postcards that are returned as undeliverable, the Settlement Administrator shall make one attempt to re-send the postcard.

        d.     *E-Mail Notice*. For those Members whose e-mail addresses could be identified, the Settlement Administrator shall send an e-mail in the form attached hereto as Exhibit B. The E-Mail Notice shall have a "return receipt" or other such function that permits the Settlement Administrator to reasonably determine whether emails have been delivered and/or opened. The E-Mail Notice also shall have a hyperlink that recipients may click to be taken to a landing page on the Settlement Website. The E-Mail Notice will include a Claim Form which may be electronically submitted or mailed back to submit a claim for a Settlement Award.

        e.     *Settlement Website*. Within twenty-eight (28) days after Preliminary Approval of this Agreement, including the form and content of the Notice, the Settlement Administrator shall cause the Settlement Website to be launched on the Internet in accordance with Section 5.3(d) of this Agreement.

        4.2     The Notice shall advise the Settlement Classes of their rights under the Settlement, including the right to be excluded from or object to the Settlement Agreement or its terms. The Notice shall specify that any objection to this Settlement Agreement, and any papers submitted in support of said objection, shall be received by the Court at the Final Approval Hearing, only if, on or before the Objection/Exclusion Deadline approved by the Court and specified in the Notice, the Person making an objection shall file notice of his or her intention to do so and at the same time (a) file copies of such papers he or she proposes to submit at the Final

Approval Hearing with the Clerk of the Court, and (b) send copies of such papers via mail, hand, or overnight delivery service to Class Counsel and Defendant's Counsel.

4.3     **Right to Object or Comment.** Any member of the Settlement Classes who intends to intervene and object to this Settlement Agreement must present the objection in writing, which must be personally signed by the objector and must include: (i) the Member's full name and current address, (ii) the telephone number the Member believes received the call at issue, (iii) a statement that he or she believes himself or herself to be a member of the one or both Settlement Classes, (iv) the specific grounds for the objection, (v) all documents or writings that the Member desires the Court to consider, (vi) the name and contact information of any and all attorneys representing, advising, or in any way assisting the objector in connection with the preparation or submission of the objection or who may profit from the pursuit of the objection; and (vii) a statement indicating whether the objector intends to appear at the Final Approval Hearing (either personally or through counsel, who must file an appearance or seek *pro hac vice* admission). All written objections must be filed and postmarked no later than the Objection/Exclusion Deadline. Any Member who fails to timely file a written objection with the Court and notice of his or her intent to appear at the Final Approval Hearing in accordance with the terms of this Section and as detailed in the Notice, and at the same time provide copies to designated counsel for the Parties, shall not be permitted to object to this Settlement Agreement at the Final Approval Hearing, and shall be foreclosed from seeking any review of this Settlement Agreement by appeal or other means and shall be deemed to have waived his or her objections and be forever barred from making any such objections in the Action or any other action or proceeding.

4.4     **Right to Request Exclusion.** Any Person in either Settlement Class may submit a

request for exclusion from the Settlement on or before the Objection/Exclusion Deadline. To be valid, any request for exclusion must (i) be in writing; (ii) identify the case name *Kelly Strache v. SCI Direct, Inc. d/b/a Neptune Society*, Case No.17-cv-4692; (iii) state the name, address and telephone of the Person seeking exclusion; (iv) be physically signed by the Person(s) seeking exclusion; and (v) be postmarked or received by the Settlement Administrator on or before the Objection/Exclusion Deadline. Each request for exclusion must also contain a statement to the effect that "I/We hereby request to be excluded from the Settlement Classes in *Kelly Strache v. SCI Direct, Inc. d/b/a Neptune Society*, Case No.17-cv-4692." A request for exclusion that does not include all of the foregoing information, that is sent to an address other than that designated in the Notice, or that is not postmarked within the time specified, shall be invalid and the Persons serving such a request shall be deemed to remain Members and shall be bound as Members of the Settlement Classes by this Settlement Agreement, if approved. Any Person who elects to request exclusion from the Settlement Classes shall not (i) be bound by any orders or Final Judgment entered in the Action, (ii) be entitled to relief under this Agreement, (iii) gain any rights by virtue of this Agreement, or (iv) be entitled to object to any aspect of this Agreement. No Person may request to be excluded from the Settlement Classes through "mass" or "class" opt-outs.

4.5. **CAFA Notice**. The Claims Administrator shall timely provide the notice required by 28 U.S.C. § 1715(b).

5. **CLAIMS PROCESS AND SETTLEMENT ADMINISTRATION**

5.1 **Submission of Claims.**

a. *Submission of Electronic and Hard Copy Claims*. Members of the Settlement Classes may submit electronically verified Claim Forms to the Settlement

Administrator through the Settlement Website, may return the detachable, prepaid claim form included with Notice, may download Claim Forms to be filled out, signed, and submitted physically by mail to the Settlement Administrator, or may submit a claim via the toll-free number. Claim Forms must be submitted electronically or postmarked or received on or before the Claims Deadline. The Settlement Administrator may reject any Claim Forms that are incomplete, inaccurate, or not timely received.

   b.      *Requests for Claim Forms*. Any Members of the Settlement Classes unable or unwilling to complete an online Claim Form or download a Claim Form from the Settlement Website, or who misplaces his or her Claim Form, may call a toll-free number to be established by the Settlement Administrator, or write to the Settlement Administrator, to request a hardcopy Claim Form. In order to be sent a hardcopy Claim Form, the Member must provide his, her or its name and mailing address.

   5.2     **Review of Claim Forms.** The Settlement Administrator may reject a Claim Form, or any part of a claim for a payment reflected therein, where the Person submitting the Claim Form does not appear on the Postcard Notice List. In addition, the Settlement Administrator shall be obliged to employ reasonable procedures to screen claims for abuse or fraud and deny Claim Forms where there is evidence of abuse or fraud. The Settlement Administrator shall determine whether a Claim Form submitted by a Member of the Settlement Classes is an Approved Claim and shall reject Claim Forms that fail to comply with the instructions thereon or the terms of this Agreement, after giving the claimant a reasonable opportunity to provide any requested missing information. In no event shall any Member of the Settlement Classes have more than fourteen (14) days after being noticed by the Settlement Administrator of any question or deficiency in the submitted Claim Form to answer such

question or cure such deficiency.

      5.3    **Settlement Administrator's Duties.**

      a.    *Cost-Effective Claims Processing*. The Settlement Administrator shall, under the supervision of the Court, administer the relief provided by this Agreement by processing Claim Forms in a rational, responsive, cost-effective and timely manner.

      b.    *Dissemination of Notices*. The Settlement Administrator shall disseminate the Notice as provided in Section 4 of this Agreement.

      c.    *Maintenance of Records*. The Settlement Administrator shall maintain reasonably detailed records of its activities under this Agreement. The Settlement Administrator shall maintain all such records as required by applicable law in accordance with its business practices and such records will be made available to Class Counsel and Defendant's Counsel upon request. The Settlement Administrator shall also provide reports and other information to the Court as the Court may require. Upon request, the Settlement Administrator shall provide Class Counsel and Defendant's Counsel with information concerning Notice, administration and implementation of the Settlement. Without limiting the foregoing, the Settlement Administrator shall:

      i.    Receive requests for exclusion from Persons in the Settlement Classes and provide to Class Counsel and Defendant's Counsel a copy thereof within five (5) days of the deadline for submission of the same. If the Settlement Administrator receives any requests for exclusion or other requests from Members of the Settlement Classes after the deadline for the submission of requests for exclusion, the Settlement Administrator shall promptly provide copies thereof to Class Counsel and Defendant's Counsel.

      ii.    Provide weekly or other periodic reports to Class Counsel and

Defendant's Counsel that include, without limitation, reports regarding the number of Claim Forms received, the number of Claim Forms approved by the Settlement Administrator, and the categorization and description of Claim Forms rejected by the Settlement Administrator.

        iii.     Make available for inspection by Class Counsel and Defendant's Counsel the Claim Forms and any supporting documentation received by the Settlement Administrator at any time upon reasonable notice.

        iv.     Cooperate with any audit by Class Counsel or Defendant's Counsel, who shall have the right but not the obligation to review, audit, and evaluate all Claim Forms for accuracy, veracity, completeness and compliance with the terms and conditions of this Agreement.

        d.     *Creation of Settlement Website*. The Settlement Administrator shall create the Settlement Website. The Settlement Website shall contain information regarding how to submit Claim Forms (including submitting Claims Forms electronically through the Settlement Website) and relevant documents, including but not limited to a copy of the Notice, the Claim Form, this Agreement, the preliminary approval order entered by the Court, and the operative complaint in the Action. The Settlement Website shall also include a toll-free telephone number and mailing address through which Members of the Settlement Classes may contact the Settlement Administrator directly.

        e.     *Toll-Free Telephone Number*. The Settlement Administrator shall establish and maintain an automated toll-free telephone line (which shall not have live operators) for persons in the Classes to call with, and/or to leave questions or messages regarding Settlement-related inquiries, to answer the questions of persons who call with or otherwise communicate such inquiries (except that the Administrator shall not give, and shall not be

expected to give, legal advice), and for persons in the Classes to submit Claims via an interactive, automated IVR system.

        f.     *Final Approval Affidavit*. In advance of the Final Approval Hearing, prepare an affidavit to submit to the Court that verified that the Notice directed by the Court has been effectuated, confirms the number of Approved Claims, and identified each person in the Classes who timely and properly requested exclusion from the Classes.

        g.     *Requests for Additional Information.* In the exercise of its duties outlined in this Agreement, the Settlement Administrator shall have the right to reasonably request additional information from the Parties or any Member of the Settlement Classes.

        h.     *Timing of Settlement Payments.* The Settlement Administrator shall make all settlement payments contemplated in Section 2.1(d) of this Agreement by check and mail them to Members of the Settlement Classes within sixty (60) days after the Effective Date.

    5.4    **Payment of Notice and Settlement Administration Expenses.** All Notice and Settlement Administration Expenses shall be paid from the Settlement Fund.

**6.**    **PRELIMINARY APPROVAL ORDER AND FINAL APPROVAL ORDER.**

    6.1    **Preliminary Approval Order.** Promptly after execution of this Agreement, Class Counsel (and Defendant's counsel, to the extent Defendant's counsel's cooperation and stipulation is needed) shall take steps to effectuate the Settlement. Class Counsel will also submit this Agreement to the Court in the Illinois Action and shall move the Court to enter a preliminary approval order, which shall include, among other provisions, a request that the Court:

        a.     Appoint Plaintiffs Allard and Strache as Representatives of the DNC Class and Plaintiff Allard as Representative of the Prerecord Class;

        b.     Appoint Class Counsel to represent the Settlement Classes;

        c.     Certify the Settlement Classes under Fed. R. Civ. P. 23, *et seq*. for

settlement purposes only;

        d.      Preliminarily approve this Agreement for purposes of disseminating Notice to the Settlement Classes;

        e.      Approve the form and contents of the Notice and the method of its dissemination to members of the Settlement Classes; and

        f.      Schedule a Final Approval Hearing to review comments and/or objections regarding this Agreement, to consider its fairness, reasonableness and adequacy, to consider the application for a Fee Award and incentive awards to the Class Representatives, and to consider whether the Court shall issue a Final Judgment approving this Agreement, granting Class Counsel's application for the Fee Award and incentive awards to the Class Representatives, and dismissing the Illinois Action with prejudice.

6.2    **Final Approval Order.** After Notice to the Settlement Classes is given, Class Counsel shall move the Court for entry of a Final Judgment, which shall include, among other provisions, a request that the Court:

        a.      find that it has personal jurisdiction over all Members of the Settlement Classes and subject matter jurisdiction to approve this Settlement Agreement, including all attached Exhibits;

        b.      approve the Settlement Agreement and the proposed settlement as fair, reasonable and adequate as to, and in the best interests of, the Members of the Settlement Classes; direct the Parties and their counsel to implement and consummate the Settlement Agreement according to its terms and conditions; and declare the Settlement Agreement to be binding on, and have *res judicata* and preclusive effect in, all pending and future

lawsuits or other proceedings maintained by or on behalf of Plaintiffs and all other Members of the Settlement Classes and Releasing Parties;

  c.  find that the Notice implemented pursuant to the Settlement Agreement (1) constitutes the best practicable notice under the circumstances, (2) constitutes notice that is reasonably calculated, under the circumstances, to apprise Members of the Settlement Classes of the pendency of the Action and their rights to object to or exclude themselves from this Settlement Agreement and to appear at the Final Approval Hearing, (3) is reasonable and constitutes due, adequate and sufficient notice to all persons entitled to receive notice, and (4) fulfills the requirements of Due Process and Fed. R. Civ. P. 23;

  d.  find that the Class Representatives and Class Counsel adequately represented the Settlement Classes for purposes of entering into and implementing the Agreement;

  e.  dismiss the Action on the merits and with prejudice, without fees or costs to any party except as provided in this Settlement Agreement;

  f.  incorporate the Release set forth above, make the Release effective as of the date of the Final Judgment, and forever discharge the Released Parties as set forth herein;

  g.  permanently bar and enjoin all Members of the Settlement Classes who have not been properly excluded from the Settlement Classes from filing, commencing, prosecuting, intervening in, or participating (as class members or otherwise) in, any lawsuit or other action in any jurisdiction based on the Released Claims;

  h.  authorize the Parties, without further approval from the Court, to agree to and adopt such amendments, modifications and expansions of the Settlement Agreement

and its implementing documents (including all Exhibits to this Agreement) that (1) shall

be consistent in all material respects with the Final Judgment, and (2) do not limit the

rights of Members of the Settlement Classes;

       i.      without affecting the finality of the Final Judgment for purposes of appeal,

retain jurisdiction as to all matters relating to administration, consummation, enforcement

and interpretation of the Settlement Agreement and the Final Judgment, and for any other

necessary purpose; and

       j.      incorporate any other provisions, consistent with the material terms of this

Agreement, as the Court deems necessary and just.

6.3    **Cooperation.** The Parties shall, in good faith, cooperate, assist and undertake all

reasonable actions and steps in order to accomplish these required events on the schedule set by

the Court, subject to the terms of this Agreement.

6.4    **Certification of the Settlement Classes.** For purposes of this Settlement only,

Plaintiffs and Defendant stipulate to the certification of the Settlement Classes, which is

contingent upon the Court's final approval of this Settlement and the occurrence of the Effective

Date. Should the Settlement not receive final approval from the Court or the Effective Date not

occur, the certification of the Settlement Classes shall be void.

7.    **TERMINATION OF THE AGREEMENT**

7.1.    The Class Representatives, on behalf of the Members of the Settlement Classes,

and Defendant, shall have the right to terminate this Agreement within forty-five (45) days of: (i)

the Court's refusal to grant Preliminary Approval of the Agreement in any material respect, (ii)

the Court's refusal to enter the Final Judgment in any material respect, and (iii) the date upon

which the Final Judgment is modified or reversed in any material respect by any appellate or

other court.

7.2. Defendant has the right to terminate this agreement if more than 1,000 members of the Settlement Classes have submitted a request for exclusion (whether deemed valid or not) as of the Objection/Extension Deadline.

## 8. INCENTIVE AWARD AND CLASS COUNSEL'S ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES

8.1. **Incentive Award.** In addition to any settlement payments under the Agreement and in recognition of their efforts on behalf of the Settlement Classes, subject to Court approval, Defendant agrees Class Representatives shall be entitled to a collective incentive award in the amount of $20,000 (the "Incentive Award"), with $10,000 to each Representative. Defendant shall not object to or otherwise challenge, directly or indirectly, Class Counsel's application for the Incentive Award to the Class Representatives if limited to this amount. Class Counsel has, in turn, agreed to seek no more than this amount from the Court as the Incentive Award for the Class Representatives. The Settlement Administrator shall disburse (by wire) from the Settlement Fund to Class Counsel at Glapion Law Firm, the Incentive Award approved by the Court within fourteen (14) days after the Effective Date. Payment of the Incentive Award shall be made via wire transfer to an account designated by Class Counsel at Glapion Law Firm after providing necessary information for electronic transfer. Plaintiffs recognize and understand that the Court may decline to approve any service award whatsoever, and that their support of the Settlement is in no way contingent on any service award. Plaintiff represents and warrants that no promises of any kind have been made to her with respect to any service award or otherwise.

8.2. **The Fee Award.** Class Counsel has agreed to limit his request for attorneys' fees and costs to no more than five million dollars ($5,000,000.00), plus Class Counsel's actual expenses in litigating the Actions.

8.3    The Fee Award shall be paid, in an amount to be determined by the Court, from the Settlement Fund within fourteen (14) days after the Effective Date. Payment of the Fee Award shall be made via wire transfer to an account designated by Class Counsel at Glapion Law Firm after providing necessary information for electronic transfer.

8.4    Notwithstanding paragraph 8.3, Class Counsel may elect to have all, part, or none of his attorneys' fees award paid in periodic payments through a structured settlement arrangement entered into prior to payment of such fees to class counsel. Notwithstanding any term in the Agreement to the contrary, any fees awarded to Class Counsel to be so structured shall be paid by the Settlement Fund to an assignment company(ies) pursuant to assignment and release agreements reasonably acceptable to the Settlement Administrator ("Assignment Agreements"). Class Counsel has no present right to payment of any structured fees that are the subject of Assignment Agreements. Prior to the payment by the Settlement Fund under any Assignment Agreement, Class Counsel shall indemnify and hold harmless the Settlement Administrator administering the Settlement Fund. The Court authorizes the Settlement administrator and Settlement Fund to execute documents and take such actions as may be necessary to effectuate the assignment and payment of fees under any Assignment Agreement.

## 9.    REPRESENTATIONS AND WARRANTIES

9.1.    Each signatory to this Agreement represents and warrants (i) that he, she, or it has all requisite power and authority to execute, deliver and perform this Agreement and to consummate the transactions contemplated herein, (ii) that the execution, delivery and performance of this Agreement and the consummation by it of the actions contemplated herein have been duly authorized by all necessary corporate action on the part of each signatory, and (iii) that this Agreement has been duly and validly executed and delivered by each signatory and

27

constitutes its legal, valid and binding obligation.

## 10.  NO ADMISSION OF WRONGDOING

10.1.  This Agreement, whether or not consummated, and any negotiations, proceedings or agreements relating to this Agreement, and any matters arising in connection with settlement negotiations, proceedings, or agreements:

a.  Shall not be admissible in any action or proceeding for any reason, other than an action to enforce the terms hereof;

b.  Shall not be described as, construed as, offered or received against the Released Parties as evidence of and/or deemed to be evidence of any presumption, concession, or admission by any Released Party of the truth of any fact alleged by Plaintiffs; the validity of any claim that has been or could have been asserted in the Action or in any litigation; the deficiency of any defense that has been or could have been asserted in the Action or in any litigation; or any liability, negligence, fault, or wrongdoing of any of the Released Parties; and

c.  Shall not be described as or construed against the Released Parties, Plaintiffs, or any Members of the Settlement Classes as an admission or concession that the consideration to be given hereunder represents the amount which could be or would have been awarded to said Plaintiffs or the Members of the Settlement Classes after trial.

## 11.  CONDITIONS OF SETTLEMENT, EFFECT OF DISAPPROVAL, CANCELLATION, OR TERMINATION

11.1  If the Effective Date does not occur for any reason, or in the event that this Agreement is not approved by the Court, or the settlement set forth in this Agreement is terminated, then this Agreement shall be canceled and terminated unless Class Counsel and Defendant's Counsel mutually agree in writing to proceed with the Agreement. Notwithstanding

anything in this Agreement, the Parties agree that the Court's failure to approve, in whole or in part, the attorneys' fees or incentive award sought by Class Counsel shall not prevent the Agreement from becoming effective, nor shall it be grounds for termination.

11.2     If this Agreement is terminated or fails to become effective for any reason, the Parties and the Members of the Settlement Classes shall be restored to their respective positions in the Action as of the date of the signing of this Agreement, with the understanding that Plaintiff Allard will be permitted to either proceed in the Illinois Action with the existing posture in the Illinois Action, or to reinstate her suit in the Middle District of Tennessee with the posture that existed in the Tennessee Action, including on Class Certification, that existed immediately prior to the conditional dismissal discussed in Section 2.3, without any waiver of Defendant's rights or defenses. In such event, any Final Judgment or other order, including but not limited to certifying any class for settlement purposes, entered by the Court in accordance with the terms of this Agreement shall be treated as vacated, *nunc pro tunc*, and the Parties and the Members of the Settlement Classes shall be returned to the *status quo ante* with respect to the Action as if they had never entered into this Agreement.

## 12.     MISCELLANEOUS PROVISIONS

12.1     **Entire Agreement.** This Agreement, including all exhibits hereto, shall constitute the entire Agreement among the Parties with regard to the subject matter hereof and shall supersede any previous agreements, representations, communications and understandings among the Parties. This Agreement may not be changed, modified, or amended except in writing signed by all Parties, subject to Court approval. The Parties contemplate that, subject to Court approval or without such approval where legally permissible, the exhibits to this Agreement may be modified by subsequent Agreement of counsel for the Parties prior to dissemination of the Notice

to the Settlement Classes.

12.2  **Governing Law.** This Agreement shall be construed under and governed by the laws of the State of Illinois, applied without regard to laws applicable to choice of law.

12.3  **Execution by Counterparts.** This Agreement may be executed by the Parties in one or more counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument. Facsimile signatures, electronic signatures, or signatures sent via e-mail shall be treated as original signatures and shall be binding.

12.4  **Jurisdiction of the Court.** The Parties agree that the Court shall retain exclusive and continuing jurisdiction over the Action, the Parties, Members of the Settlement Classes, and the Settlement Administrator in order to interpret and enforce the terms, conditions, and obligations of this Agreement.

12.5  **Notices.** Any notice, instruction, application for Court approval or application for Court orders sought in connection with this Agreement or other document to be given by any Party to any other Party shall be in writing and delivered personally or sent by registered or certified mail, postage prepaid, if to Defendant to the attention of Defendant's Counsel, or if to Plaintiffs or the Settlement Classes to Class Counsel, or to other recipients as the Court may specify. All notices to the Parties or counsel required by this Agreement, except requests for exclusion and objections, shall be made in writing and communicated by mail and e-mail to the following addresses:

|  |  |
|---|---|
| **If to Class Counsel**: | **If to Defendant's Counsel**: |
| Jeremy M. Glapion | Joseph Wylie |
| jmg@glapionlaw.com | joseph.wylie@klgates.com |
| Glapion Law Firm | K&L Gates LLP |
| 1704 Maxwell Drive | 70 W. Madison Street, Suite 3100 |
| Wall, NJ 07719 | Chicago, IL 60602 |

12.6  **Binding Effect.** This Agreement shall be binding upon and inure to the benefit of

the heirs, successors, assigns, executors and legal representatives of each of the Parties hereto.

12.6 **Construction.** For the purpose of construing or interpreting this Agreement, the Parties agree that this Agreement is to be deemed to have been drafted equally by all Parties hereto and shall not be construed strictly for or against any Party.

12.7 **Severability.** The waiver or breach by one Party of any provision of this Agreement shall not be deemed a waiver or breach of any other provision of this Agreement.

12.8 **Integration of Exhibits.** The exhibits to this Agreement are an integral and material part of the Settlement and are hereby incorporated and made a part of the Agreement.

12.9 **Recitals.** The recitals contained in this Agreement are incorporated into this Agreement and are made a part hereof.

12.10 **Headings.** The headings contained in this Agreement are for reference purposes only and shall not affect in any way the meaning or interpretation of this Agreement.

12.11 **Exclusive Remedy.** This Agreement shall be the sole and exclusive remedy of Members of the Settlement Classes against any of the Released Parties relating to any and all Released Claims. None of the Released Parties shall be subject to liability or expense of any kind to any Member of the Settlement Classes who has not timely filed a valid request for exclusion with respect to any Released Claim. Upon the entry of the Final Judgment, each and every Members of the Settlement Classes shall be permanently barred and enjoined from initiating, asserting and/or prosecuting any Released Claim(s) against any of the Released Parties in any court, arbitration, tribunal, forum or proceeding.

IN WITNESS WHEREOF, each of the Parties hereto has caused this Agreement to be executed on its behalf by its duly authorized counsel of record, all as of the day set forth below.

[SIGNATURES APPEAR ON FOLLOWING PAGE]

31

**SCI DIRECT, INC.**

Dated: _____    By (signature): _____

Name (printed): _____

Title: _____

**K&L GATES LLP**

Dated: _____    By (signature): _____

Name (printed): _____ JOSEPH C. WYLIE II _____

Title: _____ PARTNER _____

**BAKER DONELSON**

Dated: _____    By (signature): _____

Name (printed): _____

Title: _____

Dated: 9/28/17

**SCI DIRECT, INC.**

By (signature): _____

Name (printed): Dolores Ramos

Title: SVP of Operations

**K&L GATES LLP**

Dated: _____

By (signature): _____

Name (printed): _____

Title: _____

**BAKER DONELSON**

Dated: _____

By (signature): _____

Name (printed): _____

Title: _____

**SCI DIRECT, INC.**

Dated: _____

By (signature): _____

Name (printed): _____

Title: _____

**K&L GATES LLP**

Dated: _____

By (signature): _____

Name (printed): _____

Title: _____

**BAKER DONELSON**

Dated: _9/29/17_

By (signature): _____

Name (printed): _Austin K. Purvis_

Title: _Attorney_

**LINDA ALLARD**

Dated: 9/28/2017

By (signature): _____

Name (printed): _____ Linda Allard

Title: _____ Plaintiff

**KELLY STRACHE**

Dated: 9/28/2017

By (signature): _____

Name (printed): _____ Kelly Strache

Title: _____ Plaintiff

**GLAPION LAW FIRM, LLC**

Dated: 9/28/2017

By (signature): _____

Name (printed): _____ Jeremy Glapion

Title: _____ Partner

**BLAINE DIXON**

Dated: 9/29/2017

By (signature): _____

Name (printed): _____ T. Blaine Dixon

Title: _____ Esquire